IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CECELIA WOODWORTH,<br><br>Plaintiff,<br><br>v.<br><br>LELAND DUDEK,[1]<br>Acting Commissioner of the<br>Social Security Administration<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 23-CV-427-GLJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Claimant Cecelia Woodworth requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On February 16, 2025, Leland Dudek became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Leland Dudek is substituted for Kilolo Kijakazi as the Defendant in this action.

he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires Claimant to establish that she is not engaged in substantial gainful activity. Step two requires Claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that Claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if Claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background and Procedural History

Claimant was thirty-three years old at the time of the most recent administrative hearing. (Tr. 39, 577). She completed eleventh grade and alleges an onset date of November 1, 2015, due to limitations imposed by diabetes, optical coning disorder, separation disorder, PTSD, anxiety, and depression. (Tr. 603-609).

## Procedural History

On June 27, 2019, Claimant protectively applied for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 171-74). Administrative Law Judge ("ALJ") Howard Kauffman held an administrative hearing on February 10, 2021, and May 24, 2021, and determined Claimant was not disabled in a written opinion dated June 10, 2021. (Tr. 82-130, 240-67). The Appeals Council reversed and remanded the decision of the ALJ on November 2, 2021. ALJ Kauffman held a third administrative hearing on January 24, 2023, and determined Claimant was not disabled in a written opinion dated July 7, 2023. (Tr. 14-81). The Appeals Council denied review, making the ALJ's opinion the Commissioner's final decision for purposes of this appeal. (Tr.1-6). *See* 20 C.F.R. §§ 404.971, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. (Tr. 966-67). At step two he determined that Claimant had the severe impairments of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, bilateral keratoconus, and decreased vision. (Tr. 20). He found at step three that Claimant did not meet any Listing. (Tr. 21-22). At step four he found Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels noting that Claimant "may use the three standard breaks in unskilled work[,]" but could only occasionally crouch, stoop, and crawl; never climb ladders, ropes, and scaffold; never be exposed to unprotected heights or high-speed machinery' cannot be exposed to concentrated fumes dust, gases, odors, and poor ventilation; and cannot work at a production rate pace. (Tr. 22). The ALJ then concluded that Claimant could return to her past relevant work as a kitchen helper, dietary aide, and cook helper, and was therefore not disabled. (Tr. 26-28). The ALJ then proceeded to make alternative findings at step five and concluded there were also jobs Claimant could perform in the national economy, *i.e.,* laundry laborer, cleaner housekeeper, and waxer, and Claimant was therefore not disabled. (Tr. 27).

**Review**

Claimant contends that the ALJ erred by (1) handling the testimony and medical opinion of medical expert Lawrence Reese, M.D. by adopting his opinions inaccurately, and (2) failing to elicit testimony from the vocational expert ("VE") regarding (i) the impact of additional work breaks, and (ii) whether the lunch breaks for the identified job

are compensable. The Court finds Claimant's arguments unpersuasive and finds the decision of the ALJ is therefore affirmed.

The relevant medical evidence reveals that Claimant visited Tara Brown, O.D., in February 2018 and was assessed with bilateral unstable keratoconus. (Tr. 763-69). Dr. Brown referred Claimant to a contact lens clinic, and after visiting Elizabeth Escobedo, O.D., on March 14, 2018, Claimant received a pair of scleral lenses. (Tr. 784). Claimant followed up with Dr. Escobedo two weeks later reporting that she was having difficulties inserting the lenses, but otherwise her vision and comfort were "doing well." (Tr. 786). However, Claimant returned to Dr. Escobedo on April 25, 2018 indicating she had not been wearing her contact lenses due to discomfort. (Tr. 784). Dr. Escobedo recommended Claimant undergo corneal cross-linking and adjusted Claimant's lenses to improve hazing, movement, and comfort. (Tr. 794). A week later and in November 2018 Claimant reported that her overall comfort had improved. (Tr. 840, 846).

In 2020, Claimant returned to the optometrist with reports that pain in her right eye occasionally prevented her from wearing her lenses, and that she needed to remove her lenses after about 4 hours of use. (Tr. 1536). In January 2021 Claimant returned to the optometrist again indicating her lenses were uncomfortable, she had not worn the contact lens in her left eye for six months, and she generally had to remove her lenses twice a day. (Tr. 1579). On June 8, 2021, Claimant established care with Kamran Riaz, M.D., for a corneal evaluation, again reporting she was only wearing the contact lens in her right eye. (Tr. 1882-84). Dr. Riaz concluded Claimant had demonstrated an intolerance to contact

lenses and recommended corneal cross linking to halt further deterioration in eyesight. (Tr. 1882-84).

At the second administrative hearing in May 2021, Claimant testified that she was not currently wearing her left contact lens because it was broke and after four hours, she had to remove the lenses and leave them out for a "couple hours" due to discomfort and blurring. (Tr. 88). Medical expert Jeffrey Horwitz, M.D. testified that it would be reasonable that Claimant would need breaks from her lenses and opined that most people can put the lenses back in ten to fifteen minutes after cleaning them. (Tr. 92).

At the most recent administrative hearing, Claimant testified that that she wears her contact lenses for eight to ten-hours a day, but she has to take them out three to four times a day for cleaning.[3] (Tr. 45). She stated she removes the lenses every two hours and sometimes has to leave them out for two to three hours to give her eyes a rest. (Tr. 45-46). In a normal day she puts her contacts in around 8:00 AM and takes them out at 10:00 AM, 2:00 PM, and 4:00 PM. (Tr. 48-50). Dr. Reese testified that Claimant had advanced keratoconus with scarring of the cornea, and that the contact lenses are rigid, hard, and can cause discomfort. (Tr. 51, 55). He opined that a reasonable amount of time to clean the contact lenses would be less than five minutes as "five minutes is an inordinately long

---

[3] At the most recent administrative hearing, Claimant's testimony as to how often she wore and how frequently she removed her lenses was disorganized due to miscommunication between the ALJ, medical expert, and Claimant. (Tr. 44-50). For instance, Claimant testified that she wears her lenses eight-to-ten hours a day, only four hours day, and only two hours out of the twelve-to-fourteen hours she is awake. (Tr. 44-46). Claimant also initially testified that she removes her lenses every four hours. (Tr. 48-50). Ultimately, after clarification, the Claimant testified as set forth above.

period of time," and most people would clean them once or twice a day. (Tr. 55, 57). However, he noted that Claimant is likely removing the lenses due to discomfort and cleaning the lenses while they were out. (Tr. 57). Dr. Reese declined to voice an opinion as to what would be a reasonable amount of time for the lenses to be out due to discomfort, noting it varies from person to person. (Tr. 55, 57).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs Claimant could perform given the RFC described above. (Tr. 67-75). The VE testified that such a claimant could perform the representative jobs of laundry laborer, cleaner housekeeper, and waxer. (Tr. 67-75). Claimant's attorney then offered a modified hypothetical in which the individual "would most likely require four to five breaks during the workday even if they were only ten minutes in duration[.]" (Tr. 72-73). The VE testified that in unskilled work, extra breaks are not tolerated and such a person would not be able to maintain employment. (Tr. 73).

In his written opinion at step four, the ALJ briefly summarized Claimant's hearing testimony and the medical evidence in the record. (Tr. 22-26). He then found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. (Tr. 23). The ALJ found the opinion of Dr. Horwitz unpersuasive but found the opinion of Dr. Reese generally persuasive and noted that Dr. Reese opined, *inter alia*, that "the claimant can be expected to clean her contacts once or twice a day [and] to not wear her contacts for fifteen minutes every two hours due discomfort[.]" (Tr. 25-26). Ultimately, the ALJ reasoned that the RFC assessment "permits the claimant to clean her contact lenses three times during the 8-hour workday."

Claimant contends that the ALJ erred in his RFC assessment by failing to comply with Soc. Sec. R. 96-8p, 1996 WL 374184 (July 2, 1997). Particularly, Claimant maintains that in concluding she only needed the three standard work breaks, the ALJ's RFC assessment incorrectly adopts or ignored Dr. Reese's opinion and is more restrictive then Dr. Reese's testimony because "it is unknown whether the lunch break that the ALJ contemplates is a compensable work break or not" and if the break is not compensable, Claimant would need a fourth break in her day to clean her lenses. Such contention is without merit.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations). . . . The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Soc. Sec. R. 96-8p, 1996 WL 374184, at *7. "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. Feb. 19, 2003)). Here, the ALJ discussed Claimant's and Dr. Reese's testimony at the most recent administrative hearing in addition to briefly discussing Claimant's visits with Dr. Brown, Dr. Escobedo, and the 2021 and 2022 ophthalmology visits. (Tr. 22-25).

The ALJ reasoned that the three standard breaks accommodate Claimant's statements that she must remove her contact lenses every two hours for cleaning and eye relief. As Commissioner contends, regardless of whether the assigned jobs have compensable lunches or not, the three standard breaks account for Claimant's eye impairment. Indeed, Claimant has not pointed to any evidence in the record that establishes Claimant would need to take any additional breaks as distinguished from the normal breaks that the ALJ assessed, and the Tenth Circuit has previously concluded that normal breaks provide time approximately every two hours during the workday. *See Lee v. Berryhill*, 690 Fed. Appx. 589, 591 (10th Cir. 2017) (concluding that the ALJ did not err in finding claimant, who needed to check her blood glucose four to six times daily, could work so long as she had normal breaks because "[w]ith normal breaks, she would have some time available to her approximately every two hours during the work day.").[4] As such, the ALJ's RFC assessment does not conflict with the opinion of Dr. Reese, and the Court can follow the ALJ's reasoning as to why Claimant's eye impairment does not warrant any additional breaks in the workday. *See Richard v. Berryhill*, 2018 WL 920651, at *2 (W.D. Okla. Feb. 16, 2018) ("'a decision of less-than-ideal clarity should be upheld' [where] 'the agency's path may be reasonably discerned'") (quoting *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979).

---

[4] Presuming the lunches were not compensable, Claimant would be compensated for a total of eight hours of work–four hours between 8:00 a.m. and 12:00 p.m. and four hours between 12:30 p.m. and 4:30 p.m. Her first break would occur between 10:00 a.m. to 10:15 a.m., the second during her uncompensated lunch between 12:00 and 12:30, and the third break, two hours later, between 2:30 p.m. and 2:45 p.m.

Relatedly, Claimant argues that the ALJ erred at step five by failing to include all of Claimant's impairments in the hypothetical question to the VE, specifically her need for breaks. However, as set forth above, the ALJ clearly considered Claimant's keratoconus, and the breaks Claimant would require due to her eye impairment. To the extent Claimant maintains that the ALJ was required to elicit testimony from the VE because the Dictionary of Occupational Title ("DOT") does not speak to a limitation regarding work breaks, the record reflects that the VE did testify as to work breaks, noting that an individual who needed more than three breaks would be unemployable in an unskilled work environment. (Tr. 73). Accordingly, the ALJ was not required to include additional limitations in her RFC assessment, or in his hypothetical questions posed to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [the claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability determination.").

Although the VE did not testify as to whether the jobs identified at steps four and five involved lunch breaks that were compensable, as discussed above, the record does not reflect that Claimant requires any additional work breaks and to the extent any error exists, it is harmless as the RFC accounts for Claimant's need to remove her contacts regardless of whether the jobs identified involve lunches that are compensable. *See Allen v. Barnhart*, 357 F.3d 1140, 145 (10th Cir. 2004) (noting harmless error applies "where based on material the ALJ did at least consider (just not properly), we could confidently say that no

reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Lastly, Claimant seems to assert that the ALJ committed reversible error in misquoting Dr. Reese's testimony because the ALJ's opinion indicates Dr. Reese opined "claimant can be expected to not wear her contacts for fifteen minutes every two hours due to discomfort" whereas, in reality, Dr. Reese declined to opine as to how long Claimant would need to have her contact lenses out due to discomfort and based his opinion on Claimant's testimony that she must remove her lenses every two hours for fifteen minutes. (Tr. 25-26). Although the ALJ misstates the record here, such error is harmless. The ALJ's opinion remains supported by substantial evidence and the record reflects that the ALJ considered Claimant's need to remove her lenses due to both cleaning and discomfort. Indeed, the ALJ ultimately found that the normal work breaks accounted for Claimant's impairment and adopted Claimant's testimony that she normally removed her lenses every two hours for fifteen minutes. (Tr. 26.) ("The above [RFC] assessment permits claimant to clean her contact lenses three times during the 8-hour workday. Pursuant to her testimony, the claimant puts her lenses in at 8:00 am and cleans them at 10:00 am, 12:00 pm, and 2:00 pm."); *see K.I. v. Kijakazi*, 2021 WL 4149087, at *4 (D. Kan. Sept. 13, 2021) (finding harmless error where the ALJ misstated the claimant's testimony because there was "no reasonable basis to conclude that the ALJ's outcome would have differed[,]" and "despite two opportunities during the hearing to present testimony supporting deficits . . . plaintiff provided no such testimony. Nor did the records plaintiff submitted provide support for a finding that she was unable to perform these activities."). The gist of Claimant's appeal is

that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("in evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

In summary, the Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Accordingly, the decision of the Commissioner of the Social Security Administration is AFFIRMED.

**DATED** this 12th day of March, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**